**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>WILLIAM MCCLOUD )  | CASE NO.: 1:17-CR-57-HAB |

## OPINION AND ORDER

William McCloud ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 65) along with a request for a hearing (ECF No. 67). Pursuant to this Court's General Order 2020-11, the Court referred his motion to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the Defendant with respect to his motion. (ECF No. 66). The FCD appeared (ECF No. 69) and filed a Motion for Compassionate Release on the Defendant's behalf. (ECF No. 71). The Government filed its response to the Motion on August 5, 2020. (ECF No. 73). The Defendant did not reply. For the following reasons, the Defendant's Motion will be DENIED.

## PROCEDURAL BACKGROUND

On November 17, 2017, McCloud was charged in a five count Indictment with maintaining a dwelling with the purpose of distributing controlled substance (Count 1); controlling a building for the purpose of distributing a controlled substance (Count 2); possessing with intent to distribute 28g or more of cocaine base (Count 3), possessing a firearm in furtherance of a drug trafficking crime (Count 4), and possession of a firearm by a felon (Count 5). Following the Defendant's guilty plea to Counts 3 and 4, he was sentenced to a term of 120 months imprisonment with four years of supervised release to follow. The remaining counts were dismissed at sentencing.

The Defendant's charges stemmed from a drug trafficking investigation in Fort Wayne. A confidential informant working with the Fort Wayne Police Department made two controlled purchases of crack cocaine from the Defendant. Officers then obtained a search warrant for the Defendant's residence and found approximately 38.5g of crack cocaine, 11.4g of cocaine, a loaded 9mm pistol and an unloaded .32 caliber revolver. (Presentence Report ¶¶s 10–14, ECF No. 59). The drugs were packaged in over 150 smaller packets for distribution. (*Id.* at ¶13).

The Defendant is currently housed at the Federal Medical Facility in Lexington, Kentucky with an anticipated release date in May 2026.

## **DISCUSSION**

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

   (i) extraordinary and compelling reasons warrant such a reduction …

   … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

2

The Government concedes that the Defendant has exhausted his administrative remedies at his facility and that his motion is properly before the Court. Thus, the Court turns to the substance of the Defendant's request, his contention that he has demonstrated "extraordinary and compelling reasons" for his release.

The Defendant asserts that he should be released from custody due to his age and medical infirmities that increase his risk of serious complications from COVID-19. The Defendant is 70 years old and is an insulin dependent, type II diabetic with diabetic neuropathy. He also suffers from chronic kidney disease, is obese, and has been diagnosed with hypertension and high cholesterol. The Defendant takes a number of medications for his various conditions, which he details in his filing.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. U.S.S.G. § 1B1.13, Application Notes 1(A)–(D). Second, the Court must

3

determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Ultimately, however, it is Defendant's burden to establish that a "compassionate release" is warranted under the statute. *United States v. Wesley*, 2020 WL 3868901, *1 (D. Kan. July 9, 2020); *see also United States v. Bright*, 2020 WL 473323, at *1 ("extraordinary and compelling" imposes a heavy burden on a defendant seeking relief under Section 3582(c)(1)(A)).

In this case, the Defendant makes a compelling case that his medical conditions qualify as "compelling and extraordinary" under the commentary to section 1B1.13. Under that commentary, a Defendant must demonstrate either that he is suffering from a terminal illness under (A)(i); or

4

that he has (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or is (3) experiencing deteriorating physical or mental health because of the aging process. If relying on 1(A)(ii), a Defendant must also show that the medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13.

The Center for Disease Control ("CDC") recognizes not only the Defendant's age but also his chronic kidney disease, diabetes, and obesity as comorbidities that increase the risk of serious injury or death from COVID-19. *See* People Who Are At Increased Risk for Severe Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last September 8, 2020). The CDC further recognizes the Defendant's hypertension as a comorbidity that might increase the risk of severe illness from COVID-19. The Defendant's medical records clearly support his assertions that he has been diagnosed with these conditions and is currently being treated for them. Additionally, the Government concedes that the Defendant's medical records indicate that he suffers from a myriad of serious health conditions. Thus, the Court concludes that the Defendant has met his burden of identifying medical conditions increasing his risks of serious illness should he contract COVID-19. *See United States v. Harris*, No. 06-CR-30058, 2020 WL 3483559, at *3 (C.D. Ill. June 26, 2020) ("[H]aving chronic kidney disease of any stage increases the risk of severe illness from COVID."); *United States v. Somerville*, ––– F. Supp. 3d ––––, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020) ("[H]ypertension and obesity have proven to be the most common comorbidities associated with increased risk of infection, grave illness, and death due to COVID-19.") (internal quotations omitted) (collecting cases).

But, the "extraordinary and compelling" analysis does not end there. The Commentary to § 1B1.13(1)(A)(ii) requires the Defendant to also demonstrate that his medical conditions "substantially diminish" his ability to provide self-care within the environment of a correctional facility and that his medical conditions be of such a nature that "he or she is not expected to recover."

Arguably, the Defendant's medical records support the position that he is suffering from medical conditions from which he is not expected to recover. Defendant states that his chronic kidney disease has been at "stage 3 for a long period of time" and there is nothing to suggest that his insulin dependence will improve over time. However, the Defendant has not argued that he is inhibited from providing "self-care" inside FMC Lexington. Nor has the Defendant demonstrated that his medical conditions are difficult to manage or that the BOP is unable to provide appropriate medical care for him. All the medical evidence indicates that the Defendant is receiving both the attention and care required for someone with his various ailments. Thus, while the Court is sympathetic that the Defendant is of an advanced age with many serious ailments, the Defendant has not met his burden of proving "extraordinary and compelling" circumstances. *See United States v. Martin,* No. 8:10-CR-305-T-33AEP, 2020 WL 5369083, at *2 (M.D. Fla. Sept. 8, 2020) (defendant positive with COVID-19 and hypertension did not sufficiently demonstrate that his medical condition substantially diminished his ability to care for himself in the facility); *United States v. Thomas,* 2020 WL 5235672 (E.D. Cal. Sept. 2, 2020)(evaluating inmate at FMC Lexington with leukemia and determining that while leukemia is a serious medical condition, Defendant did not meet his burden of demonstrating that he is prohibited from providing self-care inside the facility); *United States v. Young*, No. 18-196(2)(DWF/KMM), 2020 WL 5350295 (Sept. 4, 2020 ("[T]he Statement clearly indicates that compassionate release is warranted only under

truly extraordinary and compelling circumstances—namely, medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover.")

As for the conditions at his facility, FMC Lexington has recorded a fair number of COVID-19 cases since the pandemic began. The BOP website currently shows 212 recovered inmates, 13 recovered staff, and 8 inmate deaths.  However, against that backdrop, there is currently only one positive inmate as of the date of this Order. https://www.bop.gov/coronavirus/ (last visited September 8, 2020). Thus, it appears that FMC Lexington has been able to manage its positive cases to avoid widespread infection, limit fatalities and mitigate the effects of the virus within its walls. *See, Melgarejo*, , 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus.").

The Court must also assess whether the Defendant is a danger to society and whether the § 3553(a) factors warrant his release. The Court observes that the Defendant has served slightly under 36 months of his 120-month term of imprisonment. The Defendant asserts that he is neither a danger to society nor does he have a likelihood of recidivism due, in part, to his age and medical conditions. However, the Defendant committed his present offenses at age 67 with many of the same medical conditions from which he currently suffers. His PSR notes that at the time of his sentencing he was diabetic, hypertensive, had stage 3 kidney failure, a torn rotator cuff and a bulging disc in his back. It also details various ailments from prior incarceration at the Indiana

7

Department of Correction. Clearly, neither the Defendant's age or medical conditions diminished or deterred him from selling drugs, possessing firearms, and maintaining a drug house.[1]

Moreover, Defendant has had a lifetime of criminal involvement involving guns and drugs along with multiple probation revocations. In 1997, the Defendant was sentenced to 30 years for Aiding in Dealing in Cocaine within 1000 feet of a school.[2] Prior to that conviction, the Defendant has interactions with law enforcement that date back to 1975 and include the Defendant being shot during an attempted armed robbery. Over time, the Defendant simply has not been able to conform his conduct to the law.

Nonetheless, the Defendant asserts that he did successfully graduate from the Re-Entry Court program in 2012 and this demonstrates his ability to follow rules and abide by conditions of release. However, the offense conduct for the present offense demonstrates that although he completed the Re-Entry Court program the Defendant, when released into the community, reestablished contacts with individuals he knew to be engaged in illegal activity prior to 2015. (PSR ¶ 86: "[Defendant] advised that when he was released in 2012, he started hanging out with previous associates who sold drugs and by 2015, he had reverted to his old lifestyle."). Thus, this Court has little trouble concluding that Defendant would return to his criminal lifestyle if released again.

In sum, the Court imposed its 120-month sentence to reflect the seriousness of the Defendant's offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. The nature and circumstances of the

---

[1] Defendant's disdain for the law continued even after he was arrested on preliminary state charges in this matter. In a recorded jail call, the Defendant contacted an individual and instructed her to retrieve drug proceeds from various locations in the house so that this money could be used to bond him out of jail.

[2] The Defendant served 15 years of this sentence due to good time credit and was released from incarceration in 2012.

Defendant's offense, his history of recidivism, and the short portion of the sentence he has served, all warrant the conclusion that the significant sentence reduction the Defendant seeks would greatly undermine the above statutory purposes of sentencing.

This Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motion is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motions (ECF Nos. 65, 67, and 71) are DENIED. So ORDERED on September 9, 2020.

                                              s/ *Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT